**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| WILLIAM J. PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    No. 1:23-cv-00175-MTS |
| | ) |
| LELAND DUDEK, *Acting Commissioner of* | ) |
| *the Social Security Administration*,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of a partially adverse ruling by Defendant, the Acting Commissioner of the Social Security Administration. For the following reasons, the Court will reverse and remand the matter to the Acting Commissioner.[2]

**I.   Background**

On June 02, 2017, William Phillips ("Plaintiff") applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434 and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1385. (Tr. 300–316). Plaintiff alleges disability due to chronic obstructive pulmonary disease ("COPD"), depression, anxiety, post-traumatic stress disorder ("PTSD"), and high blood pressure, with an alleged onset date of January 01, 2014. (Tr. 333, 337). After the Commissioner initially denied Plaintiff's applications, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

---

[1] Leland Dudek is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Dudek is substituted as the proper defendant.

[2] Section 405(g) of Title 42 provides for judicial review of the SSA Commissioner's "final decision." After the ALJ concluded Plaintiff was not disabled under the Act prior to April 23, 2020, (Tr. 720), the Appeals Council did not assume jurisdiction in this matter; thus, the ALJ's decision stands as the Commissioner's final decision.

1

On August 21, 2019, following a hearing, ALJ Mannes issued his decision finding that Plaintiff was not disabled as defined in the Act.  (Tr. 18).  Plaintiff then requested review of the ALJ's decision by the Appeals Council, which denied review on August 27, 2019.  (Tr. 35–37).

Plaintiff appealed to the U.S. District Court for the Eastern District of Oklahoma, and a magistrate judge issued a report and recommendation ("R&R") on February 24, 2022.  (Tr. 810–20); *Phillips v. Kijakazi*, 6:20-cv-00288-SPS, 2022 WL 794708 (E.D. Okla. Feb. 24, 2022). In the R&R, the magistrate judge found that the ALJ had failed to properly evaluate two medical opinions of state agency psychological consultant, Dr. Theresa Horton.  (Tr. 818–19).  The magistrate judge stated that, although the ALJ had summarized Dr. Horton's June 10, 2014, and September 6, 2017, opinions and stated that they were complementary and partially persuasive, the ALJ failed to specifically discuss the supportability and consistency factors in explaining why he found the opinions partially persuasive, as required under 20 C.F.R. §§ 416.920c(b).  (Tr. 818).

The magistrate judge continued:

> [T]he ALJ purported to adopt both of [Dr. Horton's opinions] by finding them partially persuasive, but this ignores the fact that they were different in kind and degree of impairment noted for the claimant.  Furthermore, the ALJ provided no clarity as to how they were partially persuasive and yet he nevertheless did *not* adopt all the limitations proposed by even the most recent one.  It was error for the ALJ to "pick and choose" his way through the evidence in this record in order to avoid finding the claimant disabled.

(Tr. 819).  The magistrate judge instructed that if the ALJ's analysis on remand "result[ed] in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled." *Id.*  Thus, the magistrate judge recommended reversing the Commissioner's decision and remanding the case for further proceedings. (Tr. 820).  The magistrate judge also proposed finding that the ALJ did not apply the correct legal standards, and that the Commissioner's decision was therefore not supported by

2

substantial evidence.  *Id.*  On March 14, 2022, the district court summarily adopted the R&R, including the proposed finding, reversed the Commissioner's decision, and remanded the case for further analysis.  (Tr. 809); *Phillips v. Kijakazi*, 6:20-cv-00288-RAW, 2022 WL 791649 (E.D. Okla. Mar. 14, 2022).

On remand, following another hearing, ALJ Neel, issued a partially favorable decision on May 10, 2023, finding that "the claimant was not disabled prior to April 23, 2020, but became disabled on that date and has continued to be disabled through the date of this decision."  (Tr. 702–720).  The ALJ then determined that claimant was not under a disability within the meaning of the Act at any time between the alleged onset date of January 01, 2014, through the date last insured of March 31, 2019.  (Tr. 720).  Plaintiff now appeals the unfavorable portion of the May 10, 2023, decision.

## II.   Standard of Review and Legal Framework

To be eligible for disability benefits, Plaintiff must prove that he is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d), 1382c(a)(3)(A).  A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the

3

claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite h[is] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to his past relevant work by comparing the RFC with the physical demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled. *Id.* If the ALJ finds at Step 4 that a claimant cannot return to past relevant work, the burden shifts at Step 5 to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* at § 404.1520(g).

The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Even if substantial evidence would have supported an opposite decision or the reviewing court might have

4

reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision). The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

### III.  The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity ("SGA") since January 01, 2014. (Tr. 708). At Step 2, the ALJ found that, since January 01, 2014, Plaintiff has had the severe impairments of osteoarthritis, cervical radiculopathy, bilateral shoulder impingement syndrome, COPD, hypertension, major depressive disorder/dysthymia, anxiety disorder, and PTSD. *Id.* At Step 3, the ALJ found that, prior to the established onset date of April 23, 2020, Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment. *Id.* Thus, the ALJ found that, since January 01, 2014, Plaintiff

5

had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with limitations on climbing, balancing, stooping, kneeling, crouching and crawling.  (Tr. 709). Plaintiff must avoid concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards such as unprotected heights, dangerous machinery, and driving.  *Id.*  At Step 4, the ALJ found Plaintiff could not return to his past relevant work as a lumber yard workers or a material handler.  (Tr. 718).  At Step 5, the ALJ considered Plaintiff's age and determined that, prior to the established onset date, the claimant was an individual closely approaching advanced age, and on April 23, 2020, Plaintiff became an individual of advanced age, as defined in 20 C.F.R. §§ 404.1564 and 416.964.  (Tr. 719).  The ALJ also considered Plaintiff's education, work experience, and RFC and found that, prior to April 23, 2020, there were jobs in the national economy that Plaintiff could have performed, despite his limitations, such as retail marker, ticket printer and tagger, and garment bagger.  *Id.*  Consequently, the ALJ concluded that Plaintiff was not disabled under the Act between January 01, 2014, and March 31, 2019, but he became disabled on April 23, 2020.  (Tr. 720).

**IV.**     **Discussion**

Plaintiff argues that the ALJ deviated from the instructions in the 2022 remand order by failing to specifically discuss the supportability and consistency factors in explaining why he found Dr. Horton's opinions persuasive, as required by 20 C.F.R. §§ 404.1520c and 416.920c.  The Court agrees that the ALJ failed to comply with the opinion-evaluation regulations.

For claims filed on or after March 27, 2017, an ALJ evaluates medical opinions and prior administrative medical findings pursuant to 20 C.F.R. §§ 404.1520c and 416.920c.  These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative

6

medical finding(s), including those from [Plaintiff's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather, an ALJ is to evaluate the persuasiveness of all of the medical opinions and prior administrative medical findings in a claimant's case record by considering the (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.  20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c).

In evaluating the persuasiveness of a medical opinion, the most important factors for an ALJ to consider are supportability and consistency, and the ALJ must "explain how [he] considered the supportability and consistency factors . . . in [the] determination or decision."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal.  *See Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069–70 (8th Cir. 2020) (remanding where ALJ discredited a physician's opinion without discussing the factors contemplated in the regulations, as failure to comply with the opinion-evaluation regulations was legal error)).  "The ALJ's explanation need not be exhaustive, but boilerplate or 'blanket statements' do not satisfy the requirement."  *Bibb v. Kijakazi*, 2:21-cv-0070-ACL, 2023 WL 2707439, at *6 (E.D. Mo. Mar. 30, 2023) (quoting *Lucus*, 960 F.3d at 1069); *see also Pipkins v. Kijakazi*, 1:20-cv-0161-CDP, 2022 WL 218898 (E.D. Mo. Jan. 25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination).  "Section

7

416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions." *Hirner v. Saul*, 2:21-cv-0038-SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022).

Here, the ALJ summarized Dr. Horton's June 10, 2014, and September 06, 2017, medical opinions and then simply stated that they were persuasive. The following represents the entirety of the ALJ's persuasiveness analysis:

> The undersigned finds the opinions expressed by Dr. Horton in her initial opinion persuasive but notes that the evaluation was conducted only six months after the claimant's alleged disability onset date and the records from the Tulsa Center for Behavioral Health indicate that the claimant was much improved by December of 2014, less than twelve months after his alleged disability onset date. (Exhibit 8F). Dr. Horton's second opinion is also persuasive and supports an unskilled mental residual functional capacity.

(Tr. 716). The ALJ's failure to include a supportability and consistency analysis in his decision is reversible error. *See Bonnett*, 859 F. App'x at 20 (citing *Lucus*, 960 F.3d at 1069–70 (remanding where ALJ discredited a physician's opinion without discussing the factors contemplated in the regulations, as failure to comply with the opinion-evaluation regulations was legal error)). Further, the ALJ, again, provided no clarity as to how Dr. Horton's opinions were persuasive, and he "nevertheless did *not* adopt all the limitations proposed by even the most recent one." *See* (Tr. 709, 716, 819).

To the extent the ALJ relied on the medical records from the Tulsa Center for Behavioral Health ("Tulsa Center") to find that Dr. Horton's June 2014 opinion was less persuasive than her September 2017 opinion, the ALJ's characterization of the Tulsa Center records seems distorted and is not supported by substantial evidence. *See Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019) (explaining that while an "ALJ is not required to explain all the evidence in the

8

record[,]" "this does not give an ALJ the opportunity to pick and choose only evidence in the record buttressing his conclusion" (quoting *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004))); *see also Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989) ("In determining whether the Secretary's decision is supported by substantial evidence on the record as a whole, the court must take into consideration the weight of the evidence in the record both for and against the conclusion reached."). Rather than "indicat[ing] that the claimant was much improved by December 2014," (Tr. 716), the records from the Tulsa Center show that Plaintiff was admitted as emergency detention for inpatient treatment because he presented with suicidal ideation and a plan to shoot himself on November 28, 2014. (Tr. 537, 546).

During his stay at the Tulsa Center, Plaintiff reported that he had run out of his medications and was experiencing worsening depression during the holidays due to the deaths of his family members. (Tr. 541). Plaintiff explained that his brother had taken his own life with a firearm in 2006, he had found his mother's body after she died of natural causes in 2008, and his father took his own life with a firearm in front of Plaintiff on December 07, 2013.[3] (Tr. 541, 545). He reported that he had not been able to work since his father's suicide and that he had to sell most of his possessions to survive. (Tr. 544). Plaintiff stated that he had frequent panic attacks, (Tr. 562), and that he used to enjoy hunting and previously worked in home health care, but "now he just lays on the couch all day," (Tr. 563). He had also been experiencing auditory hallucinations, reporting that "Mother and Dad's picture has been talking to him. [He h]ears their voice[s]. Mother say[s], 'Hang on.' Dad wants [Plaintiff] to come with him." (Tr. 562, 564). On December 02, 2014, Dr. Ashley Walker stated that Plaintiff "report[ed] improvement so far but d[id] not appear to be entirely forthcoming" and that she was "highly concerned that [the] upcoming anniversary of [his]

---

[3] During the June 25, 2019, hearing before ALJ Mannes, Plaintiff explained that his niece also died by suicide in 2017. (Tr. 847).

9

father's death may be a major trigger for this patient, who does not really have any social support." (Tr. 563).  When Plaintiff was discharged on December 12, 2014, he was diagnosed with major depressive disorder that was recurrent and severe without psychotic features, as well as anxiety disorder.  (Tr. 538).  Further, on February 17, 2017, Dr. Abbie Ewell noted that Plaintiff had not seen a psychiatrist or taken any medications for the past two-and-a-half years.  (Tr. 670).  Plaintiff reported that he still had severe anxiety, startle responses any time guns or shootings were mentioned on television, and distressing nightmares about witnessing his father's suicide at least twice per week.  *Id.*; *see Nelson*, 413 F. Supp. 3d at 916 (stating than an ALJ may not "pick and choose only evidence in the record buttressing his conclusion").  Therefore, the case will be remanded so that the ALJ can evaluate the persuasiveness of each medical opinion and properly articulate the persuasiveness of each opinion.

Because the Court concludes that remand is necessary due to the ALJ's failure to comply with the opinion-evaluation regulations, the Court need not address Plaintiff's remaining arguments.  The Court notes, however, that the ALJ does not appear to have considered that Plaintiff's decrease in mental health treatment between early 2015 and March 31, 2019, might have been caused by his numerous barriers to care.[4]  Social Security Ruling 16-3p explicitly states

---

[4] The ALJ wrote:

> While the claimant alleged that he was unable to obtain consistent mental health treatment, he smoked one to two packs of cigarette per day for years, which suggests he had access to funds which he could have used for mental health treatment, and he had a telephone that he could have used for telehealth appointments.  (Exhibits 4F-5F, 8F-10F, 18F).  Additionally, the claimant's mental impairments worsened when he was noncompliant with his medications and had not taken them for some time.

(Tr. 717–18) (citations omitted).  Aside from the fact that the record shows that Plaintiff did not reliably have access to a phone, *see, e.g.*, (Tr. 407, 670, 748), it is a stretch to suggest that someone who lacked health insurance, (Tr. 353, 1031), sold nearly all of his possessions to survive, (Tr. 544), had significantly cut down his smoking due to cost, (Tr. 849), had to travel approximately an hour away from his home to connect with a tele-psychiatrist and was unable to do so, (Tr. 670), had such severe anxiety and depression that he rarely left his home or saw other people, (Tr. 626), and was unable to complete simple chores if they

10

that an ALJ may not "find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  SSR 16-3p, 2017 WL 5180304, at *9.  Among the many potential reasons an ALJ may consider when determining why a claimant may not have complied with or sought treatment consistent with the degree of his complaints are that: "[a]n individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms"; the side effects of a prescription may be "less tolerable than the symptoms"; "[a]n individual may not be able to afford treatment"; and "[d]ue to a mental impairment (for example, individuals with mental impairments that affect judgment, reality testing, or orientation), an individual may not be aware that he or she has a disorder that requires treatment."  *Id.*, at *9–10.

Here, the record is replete with examples of barriers that may have hindered Plaintiff's ability to access care.  *See, e.g.*, (Tr. 50–51, 58, 353, 626, 670, 684, 746, 749).  For instance, in February 2017, Dr. Ewell noted that Plaintiff had many significant barriers to care, such as his remote location, lack of funding, lack of reliable transportation, lack of a phone, and inability to walk distances due to his COPD.  (Tr. 670).  On remand, the ALJ should consider the possible

---

took longer than a few minutes, *id.*, could have used his cigarette money to consistently pay for telehealth appointments.  *See* Tobacco, *Stedman's Medical Dictionary* (Nov. 2014) ("Nicotine use is powerfully addictive, leading to habituation, tolerance, and dependency.").  Additionally, federal courts repeatedly have recognized that "a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'"  *Pates-Fire v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (alterations in original) (quoting *Mendez v. Chater*, 943 F. Supp. 503, 508 (E.D. Pa. 1996)); *see also Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 277–78 (W.D. N.Y. 2005) (holding that an ALJ must take into account whether a mentally ill (bipolar and personality disordered) claimant's failure to comply with prescribed treatment results from the mental illness itself); *Brashears v. Apfel*, 73 F. Supp. 2d 648, 650–52 (W.D. La. 1999) (remanding case for consideration of whether the claimant's noncompliance with prescribed treatment was excusable due to a mental impairment).

11

reasons Plaintiff may not have complied with or sought treatment, pursuant to SSR 16-3p. *See* SSR 16-3p, 2017 WL 5180304, at *9–10; *see also Nelson*, 413 F. Supp. 3d at 916.

## Conclusion

For the foregoing reasons, the Court finds that the ALJ's determination is not supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner is **REVERSED**, and this matter is **REMANDED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 28th of March 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE